CHRISTIAN BROTHERS, INC. *v.* SOUTH WINDSOR
ARENA, INC., ET AL.
(4274)

DUPONT, C. J., HULL and DALY, Js.

Argued May 1—decision released June 10, 1986

*Richard I. Cohen,* for the appellants (defendants).

*Bianca D. Mackey,* with whom, on the brief, was *Donald R. Holtman,* for the appellee (plaintiff).

PER CURIAM. The named defendant (South Windsor) and the defendants, the Arena Operating Company, Inc. (Arena), and Richard Grigorian, appeal from the judgment the trial court rendered against them in accordance with the report issued by the attorney referee before whom the case was tried. The defendants claim that the court erred in denying their objections to the report, and in rendering judgment in accordance with it, because the report contained an erroneous conclusion of law: that South Windsor's separate corporate identity could be ignored and Grigorian and South Windsor could be held liable for the corporate debt of Arena under the doctrine of "piercing the corporate veil."[1] The defendants also claim that the referee erroneously found that they had agreed to pay the plaintiff service charges at the rate of 18 percent per year on any outstanding balance on their debt to the plaintiff. We find error in part.

In the attorney referee's meticulous and well reasoned report, he found that the plaintiff was owed $7632.76 for hockey sticks it sold to Arena. The referee also found that the defendant South Windsor was merely an extension of Arena and that Grigorian had control over the management of both corporations. Accordingly, it concluded that South Windsor and Grigorian should be held liable under either the "instrumentality rule" or the "identity rule" as promul-

---

[1] This claim of error contained four subordinate issues: (1) whether the referee's report erroneously found that South Windsor had "taken over" Arena; (2) whether the referee's report erroneously found that South Windsor made no changes of a substantial nature in the business operation; (3) whether the referee's report misapplied the "instrumentality rule" of corporate law so as to hold South Windsor and Richard Grigorian liable for a corporate debt incurred by Arena one and one-half years before; and (4) whether the referee's report misapplied the "identity rule" of corporate law so as to hold South Windsor and Richard Grigorian liable for a corporate debt incurred one and one-half years before by Arena.

gated in the landmark case of *Zaist* v. *Olson,* 154 Conn. 563, 575, 227 A.2d 552 (1967). The referee also awarded 18 percent interest apparently based on a finding that the behavior of the parties gave rise to an implied contract that the defendant would pay the plaintiff an 18 percent charge on any outstanding balance it owed. On June 14, 1985, the trial court, *Stoughton, J.,* in accordance with the referee's report, rendered judgment against all three defendants in the amount of $7632.76 plus interest at the rate of 18 percent per annum from December 2, 1979, to the date of judgment.

The defendants' first claim is that the referee erroneously applied the instrumentality or identity rule to pierce the corporate veil and find them liable for the debts of Arena. Although the defendants strenuously assert to the contrary, it is quite clear that this claim of error is primarily an attempt to have us reevaluate the referee's factual findings concerning Grigorian's involvement in both corporations and South Windsor's relationship to Arena. This court, of course, does not retry the facts, but merely examines the trial court's factual findings to determine whether they are clearly erroneous. *Jones* v. *Litchfield,* 1 Conn. App. 40, 42, 467 A.2d 936 (1983), cert. denied, 192 Conn. 802, 470 A.2d 1218 (1984). We note in this regard that " '[t]he circumstances which have been considered significant in an action to disregard the corporate entity have rarely been articulated with any clarity. Perhaps this is true because the circumstances necessarily vary according to the facts of the particular case. Therefore, each case in which the issue is raised should be regarded as sui generis, to be decided in accordance with its own underlying facts. Since the issue is thus one of fact, its resolution is particularly within the province of the trial court and such resolution will be regarded as presumptively correct and will be left undisturbed on appeal

unless it is clearly erroneous.' (Footnotes omitted.) 1 Fletcher, Cyc. Corp. (Perm. Ed. 1981 Sup.) § 41.3, p. 38 . . . ." *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 562, 447 A.2d 406 (1982) (*Borden, J.,* dissenting). With this observation in mind, we have carefully considered the referee's findings of facts and have determined that they are not clearly erroneous.

We also conclude that the referee correctly applied the relevant legal principles to the facts as he found them. In his report, the referee, citing *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, *Zaist* v. *Olson,* supra, and *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 159 A. 346 (1932), properly noted that the key factor in any decision to disregard the separate corporate entity is the element of control or influence exercised by the individual sought to be held liable for corporate actions. Finding such control, the referee concluded that liability should be imposed on South Windsor and Grigorian. Where the record on appeal discloses that the trial court's conclusions were legally and logically correct, were based on factual findings which were supported by the evidence and were not clearly erroneous, no error will be found. *Southington* v. *Major Machinery Corporation,* 1 Conn. App. 253, 255, 470 A.2d 1230 (1984); *Vitale* v. *Crocco,* 1 Conn. App. 184, 185, 469 A.2d 793 (1984). Here, the referee's factual findings, which were not clearly erroneous, fully justified his legal conclusion that South Windsor and Grigorian should be held liable for the debts of Arena. Accordingly, the court did not err in accepting the referee's report.

The defendants further claim that the referee's recommendation that the plaintiff be awarded 18 percent interest was erroneous because there was no evidence that the parties had ever agreed to such charges. "It is fundamental that '[i]nterest by our law is allowed

on the ground of some contract express or implied to pay it, or as damage for the breach of some contract, or the violation of some duty.' " *Ruscito* v. *F-Dyne Electronics Co.*, 177 Conn. 149, 163, 411 A.2d 1371 (1979). While not finding an express contractual provision requiring the defendant to pay an 18 percent service charge on any overdue balance, the referee apparently concluded that there was an implied contract to that effect. It appears that this conclusion was based on the referee's finding that Grigorian "acknowledged in his testimony that service charges were made by the plaintiff." There was, however, no finding that Grigorian ever agreed to such charges. In fact, Grigorian clearly testified that he did not. Nor did the referee make any other factual findings in his report which would support a conclusion that the defendants had assented to the 18 percent interest. Accordingly, we agree with the defendants that the trial court erred in accepting this portion of the referee's report and in awarding the interest.[2]

There is error only in the awarding of interest, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover $7632.76 plus costs.

---

[2] We note that the report did not recommend interest at the statutory rate for wrongful detention of the money due the plaintiff. " 'The real question in each case is whether the detention of the money is or is not wrongful under the circumstances.' *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 275, 287 A.2d 374 (1971)." *Milgrim* v. *Deluca*, 195 Conn. 191, 201, 487 A.2d 522 (1985). On the state of this record, we need not determine whether the awarding of interest under such a standard would have been appropriate in this case.